**Below is a Memorandum Decision of the Court.**



**Brian D. Lynch**
**U.S. Bankruptcy Court Judge**
**(Dated as of Entered on Docket date above)**

_____

_

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| In re: | Case No. 20-42855-BDL |
|---|---|
| Adelina A. Moreno, | **MEMORANDUM DECISION ON MOTION FOR TURNOVER AND MOTION TO CERTIFY ISSUES TO THE WASHINGTON SUPREME COURT** |
| Debtor. | |

On March 22, 2021, chapter 7 trustee Kathryn A. Ellis (the "Trustee") filed a motion for turnover of estate property (ECF No. 14) (the "Motion for Turnover") with a supporting declaration (ECF No. 16), seeking certain federal tax refunds received by debtor Adelina A. Moreno ("Debtor"). Debtor filed an objection to the Motion for Turnover (ECF No. 22) with a declaration (ECF No. 23) and memorandum of points and authorities (ECF No. 24) (together, the "Response"). Debtor separately filed a motion for certification of questions of local law to the Washington Supreme Court (ECF No. 25) (the "Motion to Certify"). The Trustee filed an objection and response to the Motion to Certify (ECF No. 26), a reply regarding her Motion for Turnover (ECF No. 27) (the "Reply"), and a declaration (ECF No. 28).

The Court held a telephonic hearing and heard arguments from counsel on April 21, 2021 before taking the motions under advisement.

/ / /

MEMORANDUM DECISION                    1

## I. **Factual Background**

The parties do not dispute the facts material to these motions. Debtor filed a chapter 7 petition on December 30, 2020. ECF No. 1. Debtor then filed her 2020 federal tax return on January 28, 2021. ECF No. 16, Ex. 1. Debtor received a tax refund in the amount of $10,631.00, *id.*, comprised of: $572 from taxes withheld; $2,800 from the Recovery Rebate Credit (the "RRC");[1] $1,709 from the Additional Child Tax Credit (the "ACTC");[2] and $5,550 from the Earned Income Tax Credit (the "EITC").[3] ECF No. 12 at 10. The Trustee seeks a portion of Debtor's 2020 tax refund. Because the last day of the 2020 tax year fell postpetition, the Trustee prorated Debtor's tax refund to exclude approximately 0.3%, leaving a total of $10,599.11 potentially available to the estate.

Debtor claimed exemptions under Washington law. ECF No. 12 at 8–10. The Trustee conceded that certain portions of Debtor's prorated tax refund are exempt. First, she did not dispute Debtor's right to retain the full RRC in the amount of $2,800. She also conceded Debtor is entitled to an exemption in the amount of $2,630, representing the remainder of Debtor's exemption under Wash. Rev. Code ("RCW") § 6.15.010(1)(d)(ii) after using that subsection to claim $370 in cash and checking accounts as exempt. But the Trustee seeks to recover the remaining prorated refund of $5,169.11. Debtor argued that her entire tax refund is not property of the estate or that it is exempt.

/ / /

/ / /

/ / /

---

[1] 26 U.S.C. § 6428.

[2] 26 U.S.C. § 24(d).

[3] 26 U.S.C. § 32.

## II. Conclusions of Law

### A. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. Venue is proper in this District. 28 U.S.C. § 1409(a). This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), and (E).

### B. Debtor's Motion to Certify to the Washington Supreme Court

Washington is one of several states with a statute specifically authorizing certification to the state supreme court. *See* RCW §§ 2.60.010–.030. Whether to certify a question of state law to a state supreme court is within the discretion of federal courts. *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 763 F.3d 1232, 1235 (9th Cir. 2014), *certifying questions to* 183 Wash. 2d 485 (2015).

RCW § 2.60.020 recognizes the propriety of certification "[w]hen in the opinion of [the] federal court before whom a proceeding is pending, it is necessary to ascertain the local law of [Washington] in order to dispose of such proceeding and the local law has not been clearly determined." The Ninth Circuit has further stated that "[c]ertification is particularly appropriate where the issues of law are complex and have significant policy implications." *Centurion Props. III, LLC v. Chicago Title Ins. Co.*, 793 F.3d 1087, 1089 (9th Cir. 2015) (internal quotations omitted), *certifying questions to* 186 Wash. 2d 58 (2016).

As explained *infra*, the crux of this dispute is whether the ACTC and the EITC qualify as "public assistance" under Washington law. Little local guidance on this issue exists, and this issue does have significant policy implications. But this Court does not view the issue as overcomplex. The same can be said about Debtor's argument that the ACTC and the EITC are exempt as "child support" under Washington law. Determining the scope of exemption statutes and whether property is part of the bankruptcy estate is an everyday part of a bankruptcy judge's

MEMORANDUM DECISION 3

job. Other bankruptcy courts have regularly interpreted similar statutes without certifying the question to state supreme courts.

Accordingly, the Court declines to certify the issues requested by Debtor to the Washington Supreme Court.

### C. Tax Refunds as Property of the Estate

Whether an interest is property of the estate is determined by examining the nature of the interest on the date the debtor filed the bankruptcy petition. *In re Schmitt*, 215 B.R. 417, 421 (B.A.P. 9th Cir. 1997). Although federal law determines whether a debtor's interest is property of the estate, state law determines the existence and scope of a debtor's property interest. *Butner v. United States*, 440 U.S. 48, 54–55 (1979).

Debtor first argued that, because she filed her tax return postpetition, her interest in the tax refund only arose postpetition and the tax refund is not property of the estate. Debtor primarily relied on *MacKenzie v. Neidorf (In re Neidorf)*, 534 B.R. 369 (B.A.P. 9th Cir. 2015) and 11 U.S.C. § 541(a)(7). As the Court stated at the April 21, 2021 hearing, the *Neidorf* case did not involve tax returns, and it is not otherwise apposite to this case. In *Neidorf*, the debtor's asset was a claim in a national class action, and the event that qualified the debtor for an award occurred postpetition. *Id.* at 372. Nor is 11 U.S.C. § 541(a)(7) applicable here. Under 11 U.S.C. § 541(a)(1), the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case. Debtor obtained an interest in the tax refund as she earned income throughout 2020. The tax credits for the prepetition portion of the tax year are sufficiently rooted in Debtor's prepetition earnings to be considered property of the estate, notwithstanding that obtaining the refund was contingent on her filing a tax return after the end of the tax year. *Segal v. Rochelle*, 382 U.S. 375, 379–80 (1966). The tax refund accounting for all but the last day of the 2020 tax year—the only day that falls postpetition—is property of the estate.

MEMORANDUM DECISION                4

### D. The RRC Portion of the Tax Refund

As noted, the Trustee did not dispute that Debtor is entitled to the RRC. The recently enacted 11 U.S.C. § 541(b)(11), which became effective December 27, 2020, excludes RRCs from estate property. Accordingly, the $2,800 RRC received by Debtor is not part of the estate.

### E. The $572 in Withheld Taxes

Debtor also claimed in her Amended Schedule C, filed March 18, 2021, that the $572 portion of her 2020 refund for taxes withheld is exempt under RCW § 6.27.150. ECF No. 12 at 10. The Trustee challenged Debtor's claim of this exemption in her Reply, ECF No. 27 at 4, but Debtor did not articulate how this statute would be applicable to the taxes withheld portion of her tax refund, nor did she otherwise rebut the Trustee. The Court need not reach the issue. As explained *infra*, the withheld portion of Debtor's tax refund is exempt irrespective of RCW § 6.27.150's applicability, as it is encompassed by her remaining exemption under RCW § 6.15.010(1)(d)(ii).

### F. The ACTC and the EITC Portions of the Tax Refund

Debtor argued that her remaining tax refund—considering that the RRC is not part of the estate and that Debtor can still apply $2,630 of the exemption under RCW § 6.15.010(1)(d)(ii)— is exempt under Washington law as either: (1) "public assistance" under RCW §§ 74.04.280 and 74.04.005; or (2) "child support" under RCW § 6.15.010(1)(d)(iv).

The Trustee argued that the ACTC's status under Washington law need not be determined in this case because the ACTC portion of Debtor's tax refund could be encompassed by Debtor's remaining exemption under RCW § 6.15.010(1)(d)(ii). But the remaining catch-all exemption under RCW § 6.15.010(1)(d)(ii), if not applied to the ACTC, could be applied elsewhere. If the ACTC is exempt under Washington law independent of the catch-all exemption, it would benefit Debtor by allowing her to exempt additional funds or personal

property. Therefore, the Court must determine whether both the ACTC and the EITC are exempt under Washington law.[4]

       1. <u>The ACTC and the EITC are not exempt as "child support" under RCW § 6.15.010(1)(d)(iv).</u>

RCW § 6.15.010(1)(d)(iv) makes exempt "[a]ny past due, current, or future child support paid or owed to the debtor, which can be traced." Because "child support" is not defined in Washington's exemption scheme, Debtor referred the Court to RCW § 26.18.020(3) (defining the "duty of support" as "the duty to provide for the needs of a dependent child, which may include necessary food, clothing, shelter, education, and health care") and to RCW § 74.20A.020(4) (defining "support obligation" as "the obligation to provide for the necessary care, support, and maintenance, including medical expenses, of a dependent child or other person as required by statutes and the common law of this or another state"). Debtor argued that both the ACTC and the EITC should be exempt under RCW § 6.15.010(1)(d)(iv) by advocating an expansive definition of "child support," which would make exempt any funds allocated toward the care of a child.

To ascertain the plain meaning of Washington statutes, "[a] nontechnical statutory term may be given its dictionary meaning; statutes should be construed to effect their purpose, and unlikely, absurd, or strained consequences should be avoided." *State v. Smith*, 189 Wash. 2d 655, 662 (2017) (citation omitted). The Merriam-Webster Dictionary defines child support as

---

[4] Debtor argued that, under Fed. R. Bankr. P. 4003(c), the Trustee has the burden of proving that Debtor's exemptions are not properly claimed. While Fed. R. Bankr. P. 4003(c)'s burden allocation would be applicable in analyzing federally created exemptions, whether it applies in the context of state-law exemptions is not so clear. Under Washington law, the person claiming exemptions holds the burden of proof. *Matter of Marriage of Golubeva & Pistrak*, 4 Wash. App. 2d 1053, 2018 WL 3545386, at *2 (2018) (quoting RCW § 6.27.160(2)). Where the burden of proof conflicts between state and federal law in the context of exemptions, there is a split in authority as to which burden allocation applies after the Supreme Court decision *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000). *Compare In re Pashenee*, 531 B.R. 834, 838 (Bankr. E.D. Cal. 2015) *with Tyner v. Nicholson (In re Nicholson)*, 435 B.R. 622, 633–34 (B.A.P. 9th Cir. 2010); *see generally* Kathleen Shaffer, *Exemption Disputes in Opt-Out States: Does State Law Allocate the Burden of Proof?*, 35 Cal. Bankr. J. 59 (2019). Because the present dispute is not of a factual nature, the Court need not determine which burden of proof applies.

"payment for the support of the children of divorced or separated parents while the children are minors or as otherwise legally required." *Child Support*, Merriam-Webster, https://www.merriam-webster.com/dictionary/child%20support (last visited May 10, 2021). The statutes cited by Debtor define the duty or obligation of support to dependent children or others, not child support itself. The plain meaning of "child support" refers to payments legally required of parents. To hold otherwise would permit debtors to claim as exempt any payments that may be used for the support of a child, ostensibly including all regular income. This Court joins others that have rejected similar arguments by debtors in other states. *E.g.*, *In re Tatum-Charlemagne*, 368 B.R. 654, 660–61 (Bankr. N.D. Ohio 2006); *In re Rutter*, 204 B.R. 57, 60–61 (Bankr. D. Or. 1997); *Kirtley v. George*, 1997 WL 33311019, at *4 (N.D. Okla. Aug. 7, 1997). The ACTC and the EITC are not exempt as "child support" under RCW § 6.15.010(1)(d)(iv).

       2. <u>The ACTC and the EITC are exempt as "assistance" or "public assistance" under RCW §§ 74.04.280 and 74.04.005.</u>

Washington law restricts bankruptcy trustees' ability to obtain and administer "[a]ssistance":

> Assistance given under this title shall not be transferable or assignable at law or in equity and none of the moneys received by recipients under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, *or to the operation of any bankruptcy or insolvency law*.

RCW § 74.04.280 (emphasis added). A virtually identical Washington statute protects "[g]rants awarded under [Title 74]." RCW § 74.08.210. Debtor argued that the ACTC and the EITC are "assistance" under RCW § 74.04.280 or "grants" under RCW § 74.08.210. The Court rejects the argument that the ACTC and the EITC are "grants." "Assistance" is defined by separate statutory provisions to include federal programs, but no analogous provisions for "grants" exist.

While not part of Washington's exemption scheme at RCW § 6.15.010, the Washington Supreme Court has nevertheless referred to statutes granting protections similar to the "public assistance" protection as exemptions. In *Anthis v. Copland*, the Court referred to Washington

MEMORANDUM DECISION       7

statutes protecting public and private pensions, which contained protective language similar to that of RCW § 74.04.280, as "exemption statutes." 173 Wash. 2d 752, 757 (2012). And, in fact, the title of RCW § 74.04.280 is "Assistance nontransferable and exempt from process."

The question remains whether the federal tax credits are public assistance. The statute with the definitions that apply to the entire Title 74, unless the context indicates otherwise, defines "public assistance" or "assistance" as:

> [P]ublic aid to persons in need thereof for any cause, including services, medical care, assistance grants, disbursing orders, work relief, benefits under RCW 74.62.030 and 43.185C.220, and federal aid assistance.

RCW § 74.04.005(11).

Debtor made alternative arguments with respect to RCW § 74.04.005(11). First, Debtor argued that federal tax credits should fall into the first part of the definition of "public assistance" as "public aid to persons in need thereof for any cause." But given that the statute specifically mentions "federal aid assistance," and the ACTC and the EITC are part of federal tax programs, the Court rejects this overbroad definition of "public aid." Courts should construe statutes to give meaning to all the words therein, *State v. Julian*, 102 Wash. App. 296, 302 (2000), and "the express inclusion of specific items in a class impliedly excludes other such items that are not mentioned," *State v. Linville*, 191 Wash. 2d 513, 522 (2018) (citation omitted). Debtor's first interpretation would render the phrase "federal aid assistance" superfluous. And the specific reference to federal aid assistance implies that other types of federally sourced income fall outside the scope of the statute. If federal tax credits can be categorized under RCW § 74.04.005(11) as "public assistance," it is as "federal aid assistance"—Debtor's alternative argument.

Free of Debtor's overbroad arguments, the issue is whether the ACTC and the EITC are "federal aid assistance." And the issue can be narrowed further. RCW Title 74 separately defines "federal aid assistance" as:

> [T]he specific categories of assistance for which provision is made in any federal law existing or hereafter passed by which payments are made from the federal government to the state in aid or in respect to payment by the state for public assistance rendered to any category of needy persons for which provision for federal funds or aid may from time to time be made, or a federally administered needs-based program.

RCW § 74.04.005(8). This definition specifies two types of federal assistance, as separated by the comma. The first part describes assistance in the form of monetary payments from the federal government to the state for administration to needy persons but does not describe federal tax credits, as those are credited or paid by the federal government directly to taxpayers. But the second part includes as "federal aid assistance" any "federally administered needs-based program." To qualify as "assistance" protected from bankruptcy administration under RCW § 74.04.280, the ACTC and the EITC must qualify as "federally administered needs-based program[s]."

Washington "[e]xemption statutes should be liberally construed to give effect to their intent and purposes." *Anthis v. Copland*, 173 Wash. 2d at 756 (citations omitted). But Washington law provides no definitive direction as to whether federal tax credits can be considered federally administered needs-based programs. While there are mentions in RCW Title 74 of federal social security (RCW §§ 74.39.010, .020) and federal food stamps (RCW § 74.04.510), there is no mention of any tax-based federal benefits in a way that would offer guidance.[5] The legislative history of RCW §§ 74.04.280 and 74.04.005 is also unhelpful, and Washington cases only discuss other federal programs: *Conklin v. Shinpoch*, 107 Wash. 2d 410, 416 (1986) (finding social security benefits are federal aid assistance because social

---

[5] As noted by Debtor at the April 21, 2021 hearing, Title 74 does mention federal tax credits in one instance. RCW § 74.04.225(c) mandates that an online opportunity portal maintained by the State provide access to, among other public resources, tax credits. And part of the legislature's findings in mandating the online portal was that, "[e]ach year millions of federal dollars go unclaimed due to underutilization of benefits such as tax credits, health care coverage, and food support." 2010 Wash. Sess. Laws 1st Sp. Sess. Ch. 8 (S.S.H.B. No. 2782). Thus, the only mention of federal tax credits in RCW Title 74 does not assist resolution of the present issue.

MEMORANDUM DECISION                        9

security is a federally administered needs-based program); *State v. Farmer*, 100 Wash. 2d 334, 337 (1983) (finding food stamps are a form of federal aid assistance).

The Trustee argued against categorizing any federal tax credit as a federally administered needs-based program, suggesting that making certain tax refunds exempt as needs-based programs would cause the availability of the exemptions to differ between debtors. The Trustee pointed out that debtors with children would be entitled to exemptions unavailable to other debtors due to the nature of the ACTC. The Court is unpersuaded. Whether state or federal, the availability of exemptions between different debtors varies based on each debtor's circumstances. The Washington Legislature made exempt certain public assistance received by debtors, and it is within the Washington Legislature's prerogative to do so. Exemptions are designed, with policy interests in mind, to treat individuals differently based on their circumstances and property interests. This is particularly true of an exemption for "federally administered needs-based programs."

The Internal Revenue Service, a federal agency, ensures that tax credits are distributed appropriately. Under RCW §§ 74.04.280 and 74.04.005, the question is whether each tax credit is a needs-based program.

### a. *The ACTC is a federally administered needs-based program.*

Several bankruptcy courts have analyzed whether the ACTC is exempt as public assistance, albeit under state exemption statutes worded differently than Washington's.

In *In re Farnsworth*, the court considered an Idaho statute under which the debtors claimed that the ACTC fit within an exemption for "[b]enefits the individual is entitled to receive under federal, state, or local public assistance legislation." 558 B.R. 375, 377 (Bankr. D. Idaho 2016) (quoting Idaho Code § 11–603(4)). The *Farnsworth* court found that the ACTC was exempt under the Idaho statute. The court used a three-part inquiry developed by other Idaho bankruptcy courts to hold that the tax credit was public assistance, examining: (1) the purpose

and policy of the tax credit; (2) the nature of the taxpayer's access to the credit—if a refundable credit, meaning that taxpayers may receive the credit in excess of their taxes owed, that weighs in favor of it being exempt; and (3) the income levels at which the credit is phased out or eliminated. *Id.* at 377 (citing *In re Crampton*, 249 B.R. 215, 217–18 (Bankr. D. Idaho 2000)) (other citations omitted).

Prior to *Farnsworth*, the Idaho bankruptcy court had ruled that the ACTC was not a public assistance benefit that could be exempt under the same Idaho statute. *Id.* (citing *In re Steinmetz*, 261 B.R. 32 (Bankr. D. Idaho 2001)). But the *Farnsworth* court chronicled the history and amendments to the ACTC, finding that the amendments over the years required reversal of its prior ruling. *Id.* at 381. When first enacted, the ACTC's purpose was to reduce tax burdens for all large families, regardless of income. *Id.* But the amendments and subsequent legislative history of the ACTC showed that the updated ACTC was largely aimed at lifting lower-income families out of poverty. *Id.* The fact that the ACTC also benefited taxpayers with higher incomes did not deter the court, given the ACTC's primary purpose. *Id.* Considering this purpose, the fact that the ACTC is a refundable tax credit and that "the bulk of [ACTC] refunds go to parents with very modest incomes, and likely small or no tax liabilities," the court found the ACTC to be exempt as public assistance. *Id.* at 380–81.

As noted in *Farnsworth*, other courts have used similar reasoning to reach the same result in the context of other states' public assistance exemptions applied to the ACTC. *Hardy v. Fink (In re Hardy)*, 787 F.3d 1189, 1194–95 (8th Cir. 2015) (holding that the ACTC is exempt as a "public assistance benefit"); *In re Hatch*, 519 B.R. 783, 789–91 (Bankr. S.D. Iowa 2014) (same); *In re Vazquez*, 516 B.R. 523, 526–28 (Bankr. N.D. Ill. 2014) (same); *In re Koch*, 299 B.R. 523, 527–28 (Bankr. C.D. Ill. 2003) (same). In these cases, the state statutes broadly exempted a "public assistance benefit" without specific reference to federal tax credits or the ACTC. Washington's statute—referring to "federal aid assistance" that is inclusive of "federally

administered needs-based program[s]"—is not identical to those states' statutes that exempt "public assistance benefit[s]." But Washington's statute is similarly broad, and its specific reference to needs-based federal aid assistance provides equal, if not greater, support for treating the ACTC as exempt.

Moreover, cases ruling that the ACTC is not exempt are distinguishable from this case for one of two reasons: (1) as noted in *Farnsworth*, older cases interpreted a now outdated version of the ACTC, which was not explicitly aimed at benefitting lower-income families; and (2) certain states' statutes implicitly or explicitly exclude the ACTC from being exempt. On the latter point, consider *In re Jackson*, No. 12–9635–RLM–7A, 2013 WL 3155595 (Bankr. S.D. Ind. June 20, 2013), which held that the ACTC was not exempt under Indiana law. The Indiana exemption scheme analyzed in *Jackson* set exemptions by reference to specific sections of the Internal Revenue Code (the "IRC"). *Id.* at *1. While the scheme referred to the IRC's section regarding the EITC, making that credit exempt, it did not mention the IRC section regarding the ACTC. *Id.* The *Jackson* court also found that, unlike the EITC, the ACTC was not designed to afford economic relief to lower-income individuals, but it cited several older cases interpreting the former version of the ACTC. *Id.* at *2.

As *Farnsworth* and *Hardy v. Fink* point out, the ACTC in effect for tax year 2015 was primarily aimed at lifting lower-income families out of poverty, as evidenced by comments from Congress and the presidents who enacted amendments to the ACTC. The ACTC received by Debtor for tax year 2020 is no different in that respect. The fact that the ACTC may also benefit higher-income taxpayers does not undermine its primary purpose and effect of benefitting lower-income households. Moreover, the ACTC is refundable, such that taxpayers may receive the credit in excess of their taxes owed. As other courts have noted, the fact that the ACTC is refundable also suggests a more needs-based purpose than those tax credits that are nonrefundable, as refundable credits often benefit lower-income taxpayers to a greater extent.

Considering Washington's public assistance statute and the precedent from bankruptcy courts outside of Washington interpreting similar public assistance statutes, the Court concludes that the ACTC is a federally administered needs-based program and is protected from bankruptcy administration under RCW § 74.04.280.

### b. *The EITC is a federally administered needs-based program.*

As with the ACTC, several courts have looked at the EITC in the context of state-created public assistance exemptions, but those exemptions do not precisely match Washington's. Courts more quickly recognized the EITC as a form of social welfare than they did the ACTC because the EITC was targeted at assisting lower-income individuals from its inception. This characteristic of the EITC was discussed in *In re Jones*, 107 B.R. 751 (Bankr. D. Idaho 1989). *Jones* involved the same Idaho statute as the *Farnsworth* case, which made exempt "benefits the individual is entitled to receive under federal, state, or local public assistance legislation." *Id.* at 751 n.1 (quoting Idaho Code § 11–603(4)). The Idaho statute is comparable to Washington's: both include broad if unspecific references to federal assistance. The *Jones* court held that the EITC was exempt as public assistance because of its primary purpose of affording economic relief to lower-income heads of household. *Id.* at 752. It further noted that the EITC is refundable, meaning "the effect of the [EITC] legislation is to put money in the pockets of certain needy taxpayers" instead of merely reducing their tax burden. *Id.* (quoting *Hoffman v. Searles (In re Searles)*, 445 F. Supp. 749, 752 (D. Conn. 1978)). The *Jones* court also looked to *Goldberg v. Kelley*, 397 U.S. 254 (1970), where the Supreme Court "gave credence to the theory the [EITC] was an item of social welfare legislation intended to provide low income families with the very means by which to live." *Id.* (internal quotations omitted). These characteristics of the EITC, combined with the fresh start policy of the Bankruptcy Code, led to the court's conclusion that the EITC was exempt under Idaho law. *Id.* at 751–52.

Another instructive case is *In re Tomczyk*, 295 B.R. 894 (Bankr. D. Minn. 2003), where the court held that the EITC was exempt under Minnesota's analogous public assistance exemption statute. Minnesota's statute states:

> All relief based on need, and the earnings or salary of a person who is a recipient of relief based on need, shall be exempt from all claims of creditors including any contractual setoff or security interest asserted by financial institution. For the purposes of this chapter, relief based on need includes MFIP, work first, general assistance medical care, supplemental security income, medical assistance, Minnesota supplemental assistance, and general assistance . . . .

*Id.* at 895–96 (quoting Minn. Stat. § 550.37, Subd. 14). The *Tomczyk* court found the EITC exempt as included in the phrase "all relief based on need," not the broader provision exempting "earnings or salary of a person who is a recipient of relief based on need." *Id.* at 897. Like the *Jones* court, the *Tomczyk* court noted that the EITC was designed to provide relief for lower-income families. *Id.* at 896 (citing *Sorenson v. Sec'y of Treasury of U.S.*, 475 U.S. 851, 864 (1986)). The court listed other cases where the EITC was found to be exempt as a public assistance benefit,[6] and those where the EITC was not allowed as an exemption.[7] A survey of these cases shows that, as with the ACTC, courts have generally regarded the EITC to be a form of needs-based public assistance. Then, whether the EITC is exempt in each state ultimately depends on the language of that state's exemption scheme. And where statutes broadly make exempt any "public assistance," courts have trended in favor of finding the EITC is exempt. *See, e.g.*, *Hamm v. James (In re James)*, 406 F.3d 1340, 1344 (11th Cir. 2005)

---

[6] *In re Fish*, 224 B.R. 82 (Bankr. S.D. Ill. 1998); *In re Brown*, 186 B.R. 224 (Bankr. W.D. Ky. 1995); *In re Goldsberry*, 142 B.R. 158 (Bankr. E.D. Ky.1992); *In re Davis*, 136 B.R. 203 (Bankr. S.D. Iowa 1991).

[7] *Luster v. Collins (In the Matter of Collins)*, 170 F.3d 512 (5th Cir. 1999) (finding that the EITC was not exempt under Louisiana's statute, which only exempted payments made under the state's public assistance scheme); *Trudeau v. Royal (In re Trudeau)*, 237 B.R. 803 (B.A.P. 10th Cir. 1999) (finding that Wyoming's reference to "earnings" precluded inclusion of the EITC); *In re Rutter*, 204 B.R. 57 (Bankr. D. Or. 1997) (finding that Oregon's public assistance exemptions were limited to funds provided by the Oregon Adult and Family Services Division of the Dept. of Human Resources); *In re Beagle*, 200 B.R. 595 (Bankr. N.D. Ohio 1996) (finding that the repeal of Ohio's exemption statute related to the EITC made it nonexempt).

(rejecting the trustee's contention that "all amounts paid or payable as public assistance to needy persons" should be restrained to local public assistance, merely because other statutes in the scheme were for state public assistance).

In cases where the EITC has been found nonexempt under state law, it is generally because the particular statutory scheme explicitly or implicitly gives reason to exclude the EITC. The cases cited by the Trustee illustrate this trend. First, the Trustee cited two cases finding that the EITC was not a public assistance benefit: *Nisselson v. Fasarakis (In re Fasarakis)*, 423 B.R. 34 (Bankr. E.D.N.Y. 2010) and *In re Garrett*, 225 B.R. 301 (Bankr. W.D.N.Y. 1998). Both involved New York's public assistance exemption statute, which made exempt "local public assistance benefits." *In re Fasarakis*, 423 B.R. at 39; *In re Garrett*, 225 B.R. at 303. The courts found that the qualifier, "local," precluded federal assistance from the statute. *In re Fasarakis*, 423 B.R. at 39; *In re Garrett*, 225 B.R. at 303. Another case cited by the Trustee involved a similarly distinguishable statute. In *In re Egorov*, the court found that the EITC was not exempt under California law exempting public assistance benefits. No. 13-02903-MM7, 2013 WL 6185401, at *3–5 (Bankr. S.D. Cal. Nov. 22, 2013). But the California scheme, at least at that time, provided a comprehensive list of public assistance programs from which income would be exempt. *Id.* at *3 (citations omitted). Because neither the EITC nor any other tax credit was included in that comprehensive list, the court ruled that the EITC was not exempt as public assistance. *Id.* at *3–5. The *Egorov* court specifically noted that, "[w]here the state statute is general or specifically includes Tax Credits, they are found exempt." *Id.* at 4 (citing *In re Longstreet*, 246 B.R. 611, 617 (Bankr. S.D. Iowa 2000)). Washington's statute is general in nature when describing federal needs-based programs.

Unlike in the cases where the EITC does not fit within certain states' public assistance exemptions, Washington's statute offers no reason to exclude the EITC or other federal tax credits. The statute protects funds from any federally administered needs-based program. As

MEMORANDUM DECISION 15

numerous courts have held, the EITC is specifically aimed at providing monetary assistance to lower-income individuals. And like the ACTC, the EITC is refundable. For those reasons, the Court concludes that the EITC is protected from bankruptcy administration under RCW § 74.04.280.

### III. <u>Conclusion</u>

With the Court's holding that the ACTC and the EITC are protected from bankruptcy administration under Washington law, Debtor's entire tax refund is either not property of the estate, in the case of the RRC, or exempt from administration in this bankruptcy, in the case of the portions accounting for taxes withheld, the ACTC, and the EITC.

The Court will enter a separate order incorporating this ruling.

///END OF MEMORANDUM DECISION///